STATE v. EDMOND CARPENTER AND HENRY CARPENTER.

(Filed 24 May, 1939.)

1. **Intoxicating Liquor § 4a—Provision of Turlington Act permitting possession for personal use applies solely to structure used exclusively as dwelling.**

The evidence disclosed that 7½ pints of tax-paid liquor were found in a structure used by defendants as a store and dwelling, the store-room and bedroom being separated only by a partition with a door. The county in which defendants resided had not approved the Alcoholic Beverage Control Act. *Held:* The provision of the Turlington Act, Michie's N. C. Code, 3411 (j), permitting the possession of not over one gallon of intoxicating liquor for personal use applies only to possession in a structure used exclusively as a dwelling, and therefore defendants' possession in the structure used as a dwelling and store house was illegal, the applicable provision of the Turlington Act not having been repealed by the Alcoholic Beverage Control Acts, ch. 493 and ch. 418, Public Laws 1935; ch. 49, Public Laws 1937.

2. **Intoxicating Liquor § 2—**

The Alcoholic Beverage Control Acts do not repeal the provisions of the Turlington Act in regard to the possession and transportation of intoxicating liquors except in so far as the control acts are inconsistent with the Turlington Act.

APPEAL by defendants from *Phillips, J.,* and a jury, at January Term, 1939, of ANSON. No error.

The defendants were put on trial in the Anson County criminal court on the following warrants:

"State of North Carolina—Anson County.

Anson County Criminal Court.

"First Count: L. C. Hunt, being duly sworn, complains and says that in county aforesaid, on or about the 12th day of November, 1938,

Edmond Carpenter and Henry Carpenter did unlawfully and willfully have and keep in their possession certain intoxicating liquors for the purpose of sale, barter or exchange, to furnish or otherwise dispose of, contrary to the form of statute and against the peace and dignity of the State.

"Second Count: L. C. Hunt, being duly sworn, complains and says that in the county aforesaid, on or about the 12th day of November, 1938, Edmond Carpenter and Henry Carpenter unlawfully and willfully did have in their possession certain intoxicating liquors for beverage purposes not then and there having the same in their private dwelling and not for their families, nor their personal consumption and use of their families residing therein or their *bona fide* guests; contrary to the form and statute, and against the peace and dignity of the State.

"L. C. HUNT, S. H. P.

"Sworn and subscribed to before me, this the 13th day of November, 1938.                                          "G. D. DAVIDSON,
                                          "Justice of the Peace."

At the December 13th Term, 1938, of the Anson County criminal court, the defendants were tried on the foregoing warrant, both of said defendants having pleaded "not guilty" to said indictment. Whereupon, the judge of the Anson County criminal court, acting as jury, found the defendants guilty as charged.

Judgment was pronounced as follows: "1. Four months in jail to be worked on the public roads, and pay a fine of $25.00 and the costs of this action, including a solicitor's fee in each court. 2. Prayer for judgment continued from day to day until further orders of the court." Defendants excepted, assigned error and appealed to the Superior Court.

At the January Term of the Anson County Superior Court for the trial of criminal cases, his Honor, F. Donald Phillips, Judge Presiding, the defendants Edmond Carpenter and Henry Carpenter were tried on the aforesaid warrants, both of said defendants having pleaded not guilty to said charge. A jury was duly impaneled to try the issues joined between the State and the defendants.

The evidence was to the effect that L. S. Allen, a sergeant of the State Highway Patrol, in company with several other peace officers, on or about 12 November of last year, went out to a place known as "The Rock," located south of the town of Wadesboro. He testified: "I can't say what sort of business is conducted there but he had a few items in there that would be sold in any kind of business, tomato juice, bottled drinks and some spools of thread—about $10.00 worth of merchandise. There is an old gasoline tank there somewhere. The building has two

rooms downstairs; there was something upstairs, a window or door at the end of the building. In the other room there was some junk piled up and a bed in there. We found Edmond Carpenter there. (The following statements of the defendant Edmond Carpenter were allowed only as to Edmond Carpenter): Edmond Carpenter stated that he was left there to look after the business until the other one, Henry Carpenter, went to town and bought some supplies. Edmond said that Henry owned the business. We had a search warrant and we started searching and found seven pints of whiskey intact and one pint one-half full of whiskey in the cabinet about waist-high with drawers in the back that he had for a counter. There were three or four pints in one drawer and two or three in another, and I think one pint was up in one of the drawers. It was bottled in bond, stamped whiskey. I don't recall what brands it was. The place the liquor was kept looked more like a cabinet than a regular store counter. That he saw the bed but did not pay any particular attention to it. That the bed was not in the room where the merchandise was kept and that the whiskey was found in the room where the merchandise was kept. That the store-room and the bedroom are in the same house with only a partition between with a connecting door. That the only stove I saw there was in the store-room."

L. C. Hunt testified: "That he is a State Highway patrolman stationed in Wadesboro and that he was in company with the other officers when they went out to the place where the Carpenter boys were arrested. That they searched the place and found seven and one-half pints of whiskey. That they found this empty case in the outhouse 10 or 15 steps from the back door. That he did not recall what brands of liquor it was they found but that he thought it was mixed brands. That Edmond Carpenter was the defendant present when the search was made (the statement of Henry Carpenter was admitted only as to the defendant Henry Carpenter). Henry said that he did not know the whiskey was in the place and his brother got him to keep it while he was gone to town. That he assisted in arresting the other boy about one hour and 45 minutes after the search of the aforesaid premises and that Edmond Carpenter told him that he ran the place and that Edmond Carpenter had some supplies in the car which he was taking back to the place, consisting of canned meat and stuff like that." There was other corroborative evidence. The defendants introduced no evidence.

The jury, having heard the evidence, the argument of counsel and the charge of his Honor, returned a verdict of guilty as to both defendants. On the verdict rendered, the court below pronounced the following judgment:

"That the defendant Henry Carpenter be confined to the common jail of Anson County for a term of six months and assigned to work

under the supervision of the State Highway and Public Works Commission. That the defendant Edmond Carpenter be confined in the common jail of Anson County for a period of three months and assigned to work under the supervision of the State Highway and Public Works Commission." To the judgment both defendants excepted, assigned error and appealed to the Supreme Court.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*E. A. Hightower for defendants.*

CLARKSON, J. We think the evidence plenary and sufficient to be submitted to the jury that the defendants had in their possession "blind-tiger," or "boot-leg" liquor, contrary to law.

Public Laws of N. C., Extra Session, 1923, chap. 1 (known as the "Turlington Act") is, in part:

"SEC. 1. When used in this act—(1) The word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whiskey, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquors, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume, which are fit for use for beverage purposes. . . . (N. C. Code, 1935 [Michie], sec. 3411 [a]—this section is not now applicable to wine and beer.)

"SEC. 2. No person shall manufacture, sell, barter, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquor except as authorized in this act; and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented, . . . (*Supra,* sec. 3411 [b] —This section not now applicable to wine and beer.)

"SEC. 10. From and after the ratification of this act the possession of liquor by any person not legally permitted under this act to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this act. But it shall not be unlawful to possess liquor in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such liquor is for use only for the personal consumption of the owner thereof, and his family residing in such dwelling, and of his *bona fide* guests, when entertained by him therein." (*Supra,* sec. 3411 [j]— this section not now applicable to wine and beer.)"

There is no sufficient evidence that the place where the liquor was found is "one's private dwelling while the same is occupied and used

by him as his *dwelling only."* In *S. v. Hardy,* 209 N. C., 83 (87), it is said: "All the evidence is to the effect that the filling station with bedroom and kitchen were connected and used together. The building *'is not occupied and used by him as his dwelling only.'* The statute was no doubt passed to cover the very situation as shown in this case."

The law in reference to the facts in this controversy has been fully set forth recently in *S. v. Davis,* 214 N. C., 787. The material part we quote: (p. 790), "Under chap. 1, Public Laws 1923, sec. 1, known as the Turlington act, it is unlawful to manufacture, sell, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquors, except in specified instances enumerated in the statutes. This is still the law in North Carolina except to the extent that it may be modified or repealed by the Alcoholic Beverage Control Acts of 1935, ch. 493 and ch. 418, Public Laws 1935, and of 1937, ch. 49, Public Laws 1937. It is necessary then to examine the 1937 act to determine to what extent and under what conditions it is not unlawful to transport liquors in North Carolina. . . . (p. 791). The expressed purpose looking to uniformity and the several provisions of the act make it apparent that certain provisions of the 1937 act are to be given State-wide effect. This is particularly true as to the transportation provisions with which the Turlington Act, ch. 1, Public Laws 1923, conflicts only in respect to liquor being transported to Alcoholic Beverage Control Stores, and whiskey purchased from a County Store and being transported in a sealed container and in amount not to exceed one gallon for personal use, and as to the transportation of a like quantity brought into the State in sealed packages and upon which the taxes have been paid. Hence, it is still unlawful in this State for any person to possess or transport intoxicating liquors for any purpose other than those specified in the act or in a quantity in excess of one gallon, unless such liquor is in actual course of delivery to a County Store. Therefore, ch. 1, Public Laws 1923, in so far as it deals with the transportation within the State of intoxicating liquors is not inconsistent with the 1937 act except in the indicated particulars and it is still in force. *S. v. Epps,* 213 N. C., 709; *S. v. Lockey, supra* (214 N. C., 525); *S. v. Langley,* 209 N. C., 178."

It is not necessary in the warrant or indictment to "include any defensive negative averments, but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful." Public Laws 1923, Extra Session, ch. 1, part sec. 9. *S. v. Epps,* 213 N. C., 709 (716-717). In the *Davis case, supra,* citing numerous authorities, is the following: "When defendant relies upon some independent, distinct, substantive matter of exemption, immunity or defense, beyond the essentials of the legal definition of the offense itself, the *onus* of proof as to such matters is upon the defendant."

The county of Anson has not availed itself of the provisions of the Alcoholic Beverage Control Act. The court below charged the law fully as to reasonable doubt, aiders and abettors, also actual and constructive possession. The defendants cannot complain of the charge of the court below; it is more liberal than the defendants were entitled to. The court below left it to the jury to say whether the place was a "dwelling only." Under all the evidence, the possession of the liquor, as disclosed by the evidence, was unlawful.

In the judgment of the court below, we find

No error.