STATE v. JIM LOVE
and
STATE v. CLAUDE WEST.

(Filed 19 May, 1948.)

**1. Criminal Law § 6a—**

Mere initiation, instigation, invitation or exposure to temptation by enforcement officers is not sufficient to establish the defense of entrapment, it being necessary that the defendants would not have committed the offense except for misrepresentation, trickery, persuasion or fraud.

**2. Criminal Law § 53f—**

No assumption of fact or opinion expressed or fairly inferable from the charge respecting the credibility of the testimony can be made by the trial court without violating G. S., 1-180.

**3. Criminal Law § 6b—**

G. S., 18-8, grants immunity from prosecution under the prohibition laws only to a witness who is required to testify under compulsion.

**4. Criminal Law § 41g—**

The testimony of an officer of the law who purchases whiskey for the purpose of obtaining evidence against a suspect and who therefore participates in the offense and receives remuneration therefor, should be scrutinized as to its credibility.

**5. Criminal Law §§ 53f, 53j—**

An officer of the law purchased intoxicating liquor in order to obtain evidence against a suspect, and voluntarily testified for the prosecution. *Held:* An instruction which leaves the impression that the officer's credibility was enhanced by the fact that he was an officer in the performance of his duty and that he was protected from prosecution by G. S., 18-8, must be held for error as an expression of opinion on the credibility of the testimony. G. S., 1-180.

DEFENDANTS' appeals from *Carr, J.,* January Term, 1948, ROBESON Superior Court.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*J. H. Barrington, Jr., T. A. McNeill, and McLean and Stacy for defendant, appellant, Love.*

YALE LAW LIBRARY

*J. S. Butler, T. A. McNeil, and McLean & Stacy for defendant, appellant, West.*

SEAWELL, J. These defendants, because of their reputation, having been suspected of the illegal possession and sale of whiskey, were both brought to book in the following manner: On request made by local authorities, agent Bradshaw of the State Bureau of Investigation was assigned to the task of assisting them. He repaired to Robeson County and after a conference with the principal enforcement officers, in which a plan of operation was adopted, Bradshaw, being at the time dressed in plain clothes, set out to the places of residence, or business, of each of the defendants and, separately, contacted them, without disclosing his identity and official character. He asked each defendant to sell him some whiskey; and, without further inducement, each sold to him a quantity of liquor for which he paid, tagging the purchase for use as evidence. He was afterwards reimbursed for the sum thus spent. Upon his report the indictments were brought, and in each case the defendant was convicted on his testimony. Each appealed. The exceptions discussed in this opinion were to the action of the court in overruling defendants' demurrers to the evidence and motions for judgment of nonsuit, and to the specific instructions to the jury hereinafter noted.

The cases, involving practically identical features as to fact and law, were argued together in this Court, and it has been considered proper to review them together and embrace them in a single opinion. We shall, perhaps, sometimes refer to the "defendants" collectively, meaning the defendant in each case,—leaving segregation of cases, defendants, and exceptions to the reader for separate application. There is no substantial difference between the two cases in history or the incidents of trial.

1. In this Court counsel for the appealing parties renewed the argument made in the court below that defendants were made the victims of entrapment on the part of State officers concerned in the prosecution, and that this, clearly appearing in the evidence, entitles them to a nonsuit as a matter of law; and on that ground press their exceptions to the overruling of the demurrers.

The trial court instructed the jury that if they should find that the defendants were induced to violate the law by some misrepresentations of fact, by some trickery and scheme, and that they would not have done so except for the misrepresentation and trickery and chicanery practiced upon them, the evidence would not be sufficient to convict, and submitted the evidence. Counsel for the appellants consider the implied definition of entrapment inadequate and misleading since, as they contend, it is not essential to that defense that the subject should be induced to violate the prohibition law through a humanitarian appeal or false or fraudulent

deception calculated to lead an innocent person into the invited violation of law, and that the evidence of instigation and procurement by the State is sufficient to justify a nonsuit.

The State questions whether the appellants' approach to this position does not more properly challenge the wisdom and fairness of the proceeding rather than its validity; presenting a moral rather than a judicial problem, which, albeit debatable, must yield to judicially approved practice.

The judicial definitions of entrapment as used by different courts dealing with the subject afford a choice between two main classifications: Some authorities would consider the definition of entrapment as a valid defense essentially complete where the officers or agents of the State have instigated or procured a violation of law for the purpose of punishing the act thus brought about, without the presence of fraud or persuasion. See Words & Phrases, Perm. Ed., "Entrapment." A decided majority would superadd persuasion, trickery, fraud, practiced upon a person who was not inclined to violate the law, and who otherwise would not have done so. Typical of the latter is *Sorrell v. United States,* 287 U. S., 435, 77 L. Ed., 413, 86 A. L. R., 249, 259, in which we find: "Entrapment is a conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, fraud of the officer." See also dissenting opinion and annotation in A. L. R.

Our own Court has not found it exigent in any cited case we can find to give a formal definition of the defense as presented here. In *S. v. Adams,* 115 N. C., 775, 20 S. E., 722, the charge was larceny, and since the question of consent was involved, whatever appears by way of *dictum* is of little help. But see *S. v. Godwin,* 227 N. C., 449, in which it was observed that the case of the prosecution depended "upon a broken reed" upon the facts of that case, because of the "persistent entreaty and duplicity" of the expectant purchaser. *Cp. State v. Smith,* 152 N. C., 798, 67 S. E., 508; *S. v. Hopkins,* 154 N. C., 622, 70 S. E., 394; *S. v. Ice Co.,* 166 N. C., 366, 81 S. E., 737.

Considerations of the purity and fairness of the courts and the agencies created for the administration of justice gravely challenge the propriety of a procedure wherein the officers of the State envisage, plan and instigate the commission of a crime and proceed to punish it on the theory that a facile compliance with the officer's invitation confirms the accuracy of the suspicion of an unproved criminal practice,—for which the defendant is in reality punished.

The Federal courts dealing with prohibition laws, from which our own laws have been derived, as we have seen, hold that trickery, fraud, deception practiced upon one who entertained no prior criminal intent,

is necessary to a complete defense; and this, ordinarily, is for the jury. The Federal conception of entrapment is not necessarily binding upon us, for the question is much broader than the cited application in the *Sorrell case,* from which the appellants quote. But the appellants in their contention that mere initiation, instigation, invitation, or the exposure to temptation by the enforcement officers without fraud or persuasion is a sufficient defense, if not juridically out-argued, are at least judicially out-voted. See annotation, 18 A. L. R., 146; 66 A. L. R., 478; 148 A. L. R., 1467.

Motions for nonsuit were properly refused.

2. The procedure adopted in these cases led to the following instruction given by the court:

> "The Court instructs you that it is unlawful in this County to sell intoxicating liquor, and it is also unlawful to purchase intoxicating liquor in this County. There is, however, a provision in the law that when a person who, in any way, is involved in a violation of the prohibition law, is willing to testify and is subpoenaed by the State to testify on behalf of the State, that the State will not permit him to be prosecuted, whether he be an officer or any other person, and notwithstanding that fact, the defendant contends that you should find that the witness in the case violated the law in purchasing the intoxicating liquor, and contends that for that reason you ought not to accept his testimony."

The above quotation is from the charge in *S. v. Love.* A similar instruction was given in *S. v. West.*

Our courts have been very careful to see that the minds of the jurors are not influenced by opinions emanating from the bench, either directly or inadvertently given. No assumption of fact or opinion expressed or fairly inferable from the charge respecting the credibility of the testimony can be made by the court without violation of G. S., 1-180, under the interpretations so frequently given them. See annotations under this section.

In the instant cases it might be true that if the fact had been established that the officer was only a "feigned accomplice" without intention to become a criminal, the argument that his credibility could not be assailed or challenged by the circumstance of his complicity in the crime might rest upon more plausible but still somewhat paradoxical grounds.

In the cases at bar both the defendants, as sellers, and Bradshaw, as purchaser, violated the criminal law—committed an offense, *malum prohibitum,* where the only intent essential is the intent to do the prohibited act. The statute, G. S., 18-8, and the immunity granted by it, does not contemplate changing the inherent nature of an act which is accom-

plished, that is to deprive it of its character as an offense against the law, nor could it subsequently have that effect, since the immunity granted is merely from prosecution, applicable only to a witness who is required to testify under compulsion.    *S. v. Luquire,* 191 N. C., 479, 481, 132 S. E., 162.    In the former statute it was a legislative pardon; under existing law it may be regarded as a condonation.    G. S., 18-8—C. S., 3406.    The conditions under which immunity may be claimed and given are clearly set forth in *S. v. Luquire, supra.*

It does not appear in the evidence here that Mr. Bradshaw had been subpoenaed as contemplated by the statute and was compelled to give evidence, which is a condition to the immunity which the law extends. He acted voluntarily throughout the whole procedure, both in helping to furnish the *corpus delicti,* securing the evidence and giving his testimony; that was the purpose of the undertaking.    Therefore, he could not claim the immunity afforded by the statute and the trial judge was in error in instructing the jury to the contrary.    No doubt Mr. Bradshaw acted in the full consciousness that he was discharging his duty and with the purest of motives, but that is not the point.    We think the defendants were entitled to such instruction as the facts might warrant respecting the consideration the jury should give to the fact of his participation in the transaction as bearing on the credibility of his testimony.    At the same time, as a matter of fairness to the witness and to the prosecution, the jury should have been instructed to consider the manner of that participation as disclosed by the evidence.    It is not our purpose to suggest any formula since that must depend upon the evidence as it develops.

We are not so much concerned with labels as we are with what they cover.    It is universally recognized, we think, that the testimony of witnesses employed in detective work of this character and who participate in the offense and receive remuneration therefor should be scrutinized as to its credibility.    14 Am. Jur., 843, sec. 113; 23 C. J. S., 139, sec. 905 (citing *S. v. Boynton,* 155 N. C., 456, 71 S. E., 341).    From *S. v. Boynton, supra,* we quote:

> "The general rule is that the jury should be directed to scrutinize the evidence of a paid detective and make proper allowances for the bias likely to exist in one having such an interest in the outcome of the prosecution and in reference to any other relevant facts calculated to influence the testimony of the witness; but where this is done, the exact terms in which the rule may be expressed are left, by our decisions, very largely in the discretion of the trial judge."

The State's whole case rested on fact,—the official capacity of agent Bradshaw, his attitude, his approach to the transaction, his motives and intent, and procurement and participation in the offense, were mat-

ters which could not be assumed. The trial judge, of course, could not extend the supposed immunity provided in the statute to this officer; but, in his instructions, he presented the immunizing provisions of the statute and the official character of the witness in such a way as to strongly fortify his testimony and to make an impression on the minds of the jury that its credibility was enhanced by the fact that he was an officer in the performance of his duty. G. S., 1-180. Immunity is a shield, not a halo.

For the errors pointed out there must be a

New trial.

No. 651—*S. v. Love*—New trial.
No. 653—*S. v. West*—New trial.