STATE v. LEWIS CLARK.

(Filed 26 September, 1951.)

**1. Husband and Wife § 5—**

A husband is under legal duty to furnish adequate support for his wife, which means support sufficient to meet the requirements of her personal maintenance in supplying food, clothing and housing suitable to their position in life and commensurate with the husband's ability, and medical assistance reasonably required for the preservation of health.

**2. Same—**

In order to support a conviction under G.S. 14-325 it is necessary for the State to show that the husband failed to supply adequate support for his wife and also that such failure was willful, *i.e.*, purposely omitted without just cause in violation of law, and the statute may not be extended to include cases not clearly within its terms.

**3. Same—**

Failure of the husband to give his wife the affectionate consideration he should manifest for her is not sufficient to constitute the offense defined by G.S. 14-325.

**4. Same—**

Evidence tending to show that defendant provided for the personal maintenance of his wife according to his condition in life while she was living with him, including medical and hospital expenses, but that he failed to give her as much spending money as she thought she should have had and failed to give her the affectionate consideration she deemed proper in the relationship, *is held* insufficient to warrant a conviction in a prosecution under G.S. 14-325.

**5. Criminal Law § 52a (1)—**

On motion to nonsuit, only the State's evidence will be considered, except such of the defendant's evidence as tends to explain or make clear that which has been offered by the State.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Rudisill, J.,* May Term, 1951, of BUN-COMBE. Reversed.

The bill of indictment charged the defendant with willfully abandoning his wife without providing adequate support for her (G.S. 14-322); and in a second count with willfully neglecting to provide adequate support for his wife while living with her. G.S. 14-325.

The jury returned verdict of not guilty on the first count but "guilty of non-support of his wife while living with her."

From judgment on the verdict defendant appealed.

STATE *v.* CLARK.

*Attorney-General McMullan, Assistant Attorney-General Love, and Robert B. Broughton, Member of Staff, for the State.*
*Don C. Young for defendant.*

DEVIN, C. J.   The defendant assigns error in the denial of his motion for judgment as of nonsuit on the second count.

The facts were these: The defendant and the State's witness were married 19 May, 1950, in South Carolina, and on their return to Asheville the fact of the marriage was not revealed and the wife continued to live with her mother. On 15 July they began living together in a five-room house on Middlemount Avenue, the home of defendant's mother in which defendant had one-third interest. The wife was then pregnant. The latter part of September the wife went to Marion where her father and other relatives lived, and where she did some work as a baby-sitter, returning, however, frequently on week ends to Asheville. She returned to defendant's home the last of November, and remained there until 1 January, 1951, when she left and went to live with her mother, then residing in Burnsville. She assigned as reason for leaving the defendant's home that his conduct to her was unkind and such as to cause her to leave. The defendant is employed by the Tidewater Supply Company and earns $40 a week, out of which he made payments on his automobile. The baby was born 6 March, 1951. The defendant paid the doctors and hospital bills and is paying $10 a week for the support of the child. After the separation defendant went to see his wife to induce her to return home with the baby, but she declined to do so. This was after the case was in court.

As to the charge of neglect to provide adequate support for her while living with her, the defendant's wife testified in part as follows: "After I went home with him he gave me food and he gave me some money to pay on some shoes for my birthday, some gowns and a baby blanket for Christmas. He gave me $3.00 to pay on my shoes. He gave me a little change, but nothing to spend the way I wanted to . . . any clothes or anything that I needed. I asked him for money for clothing, but he did not give it to me. He told me that he did not think that I needed it. I think that I did. After I was pregnant I asked him for money for dresses. He didn't give me any. While I was pregnant and living with my husband my mother gave me some maternity dresses and my aunt gave me some. No, I didn't ask my husband for other clothes, I just asked him for maternity clothes because I thought that I could do without the other things. Yes, I asked him for money to go see a doctor while I was pregnant. Sometime he would say he didn't have it, to get it from his mother, and if I had any he wouldn't give me any. I got the money from him a time or two, and his mother gave me some a time or two.

Yes, my mother gave me money to go see the doctor a few times when I didn't have any. Lewis gave me plenty of food while I was there. I had plenty of clothes, except maternity dresses. I had not put on maternity dresses when I left there on January first. I didn't see any sense in wearing them until I had to. While at the Clark home before I left there I wore my dungarees—that is a kind of slacks. I got maternity dresses before I left the Clark home. My mother and my aunt gave them to me. We went out together at night very seldom. He took me to picture shows a few times. . . . 'In Domestic Relations Court I testified that all Lewis failed to give me was some maternity dresses, and so far as other clothes were concerned I had plenty of clothes. Yes, I did have plenty.' . . . Mrs. Clark (his mother) was good to me."

The period of time during which the defendant's wife lived in the home with him was apparently a little more than 3 months, and the question raised by defendant's motion to nonsuit on the second count in the bill is whether accepting her testimony as true it affords substantial evidence of willful neglect on his part to provide adequate support for her during this period.

Adequate is defined as meaning sufficient to meet specific requirements. Webster; *Commonwealth v. Mathues,* 210 Pa. 372 (395). Support as the word is used in the statute means personal support, maintenance; the supplying of food, clothing and housing suitable to their condition in life and commensurate with the defendant's ability; together with medical assistance reasonably required for the preservation of health. "A husband is under the legal duty of supporting his wife by furnishing her with such necessaries as the law deems essential to her health and comfort, including suitable food, clothing, lodging and medical attendance." 2 Wharton Cr. Law, sec. 1852; *State v. Moran,* 99 Conn. 115, 36 A.L.R. 862. To constitute a criminal offense under the statute the neglect on the part of the husband to provide adequate support for his wife must have been willful. The support which the law deems adequate must have been purposely omitted without just cause or excuse in violation of law. The neglect must have been unjustifiable and wrongful. *S. v. Falkner,* 182 N.C. 793, 108 S.E. 756. This being a criminal statute, it may not be extended to include cases not clearly within its terms. *S. v. Falkner, supra.*

In the case at bar the suitability of the house the wife occupied is not questioned, and she testified she had plenty of food. She said she asked him for money for clothes and that he did not give it to her because he thought she did not need any, but later she testified, "I had plenty of clothes except maternity dresses," but added her mother and aunt had given her maternity dresses, and she did not put them on until after she had left defendant's home. Her principal complaint was the defendant's

failure to give her as much spending money as she thought she should have had. She also complained that when she asked him for money to see the doctor, he was not always responsive, but she said, "I went to see Dr. Clayton as frequently as I wanted to, or he told me to come." The evidence seems to show she received proper medical care, and that for this as well as for her hospital expenses the defendant paid.

According to the testimony of the State she did not receive the affectionate consideration a husband should manifest for his wife, but failure in this respect would not be sufficient to constitute the criminal offense defined by the statute.

There was evidence from the defendant which tended to throw a different light on the transactions and relations in the home while his wife was living there with him. But on motion to nonsuit we consider only the State's evidence except such of the defendant's evidence as tends to explain or make clear that which has been offered by the State.

A careful analysis of the State's evidence leads to the conclusion that it was insufficient to warrant conviction of the defendant on the second count in the bill, and that the motion for nonsuit should have been sustained. This disposition of the case renders it unnecessary to determine the question raised as to the sufficiency of the verdict to support the judgment. *S. v. Lassiter,* 208 N.C. 251, 179 S.E. 891.

Judgment reversed.

VALENTINE, J., took no part in the consideration or decision of this case.