## STATE v. M. D. TAYLOR.

(Filed 22 August, 1952.)

**1. Intoxicating Liquor § 9d—**

The direct, unimpeached testimony of an undercover agent for the State Alcoholic Beverage Control Board that he purchased intoxicating liquor from defendant is competent in a prosecution under the Turlington Act, G.S. 18-1, *et seq.,* and defendant's contention of variance between indictment and proof on the ground that the indictment related to the Turlington Act and the officer's sole duty related to the enforcement of the State's Alcoholic Beverage Control Act, G.S. 18-36, *et seq.,* is feckless. The official status of the witness did not render him incompetent to testify as to a violation of the Turlington Act, and further, such officer is authorized to see that all laws relating to the sale and control of alcoholic beverages are observed.

**2. Criminal Law § 52b—**

Where the State's evidence is clear, unambiguous and susceptible only to the conclusion of guilt, and defendant offers no evidence, the court may charge the jury that if it finds beyond a reasonable doubt that the evidence offered by the State is true, the burden being upon the State to so satisfy them, then the jury should return a verdict of guilty as charged, otherwise to return a verdict of not guilty.

**3. Criminal Law § 52a (2)—**

The failure of the solicitor to subpoena one of the two witnesses present at the time the offense was committed is immaterial.

**4. Criminal Law § 53l—**

A party desiring an instruction that the testimony of a biased witness should be scrutinized must aptly tender written request therefor, and his oral request made at the conclusion of the charge is too late.

**5. Criminal Law § 53j—**

An instruction that the jury "may" scrutinize the testimony of an interested witness instead of "should" scrutinize such testimony, *held* not prejudicial.

APPEAL by defendant from *Rousseau, J.,* and a jury, February Term, 1952, FORSYTH.

Criminal prosecution upon a bill of indictment charging that the defendant did transport, deliver, furnish, sell, possess and possess for the purpose of sale intoxicating liquor in violation of the Prohibition Law.

On or about 10 October, 1951, two undercover investigators of the State Alcoholic Beverage Control Board were assigned to the area including the city of Winston-Salem. Shortly after 9 o'clock on the evening of 6 December, 1951, while these officers were staying at a motor court in the western part of the city, one of them called a telephone number and requested that a fifth of whiskey be delivered to the motor court. At the conclusion of this conversation, both agents went out from the motor court to a point on Grove Park Street, where the defendant, with another man, drove up in a 1951 black Plymouth automobile. The right front door of the automobile was opened and the defendant sold one of the agents a fifth of tax-paid whiskey at the price of $6.00. One agent made the purchase while the other looked on and both returned to the motor court. After the liquor was sold, the defendant drove off in the direction he was headed.

Later, on the same night, the other undercover agent called the same telephone number and requested that another fifth of liquor be delivered to Room 505 at the motor court. This agent was told to come to the same spot where the first liquor was purchased and that his order would be filled in ten minutes. In exactly ten minutes, this agent was at the designated point when the defendant again drove up, this time alone, in the same automobile bearing the same license number. The defendant then sold to this agent another fifth of the same brand of tax-paid liquor at the same price. Only one of the undercover agents was present at the last sale.

Of the two undercover investigators, only the one who made the last purchase and who was also present when the first purchase was made testified. Both bottles of liquor bore the same brand label and were, without objection, received in evidence. The bottles were not examined by the investigators for fingerprints. The car from which the liquor was delivered on both occasions bore North Carolina license number R-71721.

A local enforcement officer testified that on the day the case was tried in the Municipal Court in Winston-Salem, the defendant gave him an automobile key and he thereupon went to some point in the city and obtained a 1951 black 4-door Plymouth automobile bearing 1951 North Carolina license number R-71721.

At the close of the State's evidence the defendant demurred and moved for judgment as in case of nonsuit. This motion was denied. The defendant offered no evidence, but renewed his motion for judgment of dismissal.

There was a verdict of guilty as charged in the bill. Judgment was pronounced upon the verdict and defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*Higgins & McMichael and Richmond Rucker for defendant, appellant.*

VALENTINE, J. Defendant based his motion for judgment as of nonsuit upon the theory that there was a fatal variance between the allegations in the bill of indictment and the State's evidence. He strongly argues that the bill of indictment was based upon the Turlington Act, G.S. 18-1, *et seq.,* and that the proof tended to support a violation of the State Alcoholic Beverage Control Act, G.S. 18-36, *et seq.* The bill of indictment makes no reference to any statute. Defendant urges in support of his contention that the sale of liquor was made to an undercover investigator of the State Alcoholic Beverage Control Board whose duties are confined to the enforcement of the statutory law under which he operates. This argument overlooks the fact that the evidence of a violation of the law is the important thing and not the official status of the witness giving the evidence. As a matter of fact, one who had no connection with any agency of the State could have testified that an unlawful sale of liquor was made and such testimony, unimpeached, would be sufficient to justify a conviction.

In the present case, the State based no part of its case upon a presumption, but upon the physical facts of the transportation, delivery, possession and sale of the intoxicating liquor. Matters relating to the position of the witness with respect to the governmental agency are without effect, except for the purpose of attacking the veracity of the witness. All the evidence tended to show that the defendant on two separate occasions, after nine o'clock at night, possessed, transported and sold a fifth of tax-paid liquor. This established the illegality of the sale and was abundantly sufficient to take the case to the jury and support a verdict. *S. v. Clark,* 234 N.C. 192, 66 S.E. 2d 669; *S. v. Marsh,* 234 N.C. 101, 66 S.E. 2d 684; *S. v. Ellers,* 234 N.C. 42, 65 S.E. 2d 503.

It is and has been, since the enactment of the Turlington Act, a violation of the law in North Carolina to transport, sell, possess, and possess for the purpose of sale intoxicating liquor, except as specified in the Alcoholic Beverage Control Act. The bill of indictment unquestionably is sufficient to support a conviction under the evidence offered by the State. *S. v. Davis,* 214 N.C. 787, 1 S.E. 2d 104.

The unlawful liquor transactions engaged in by the defendant under the testimony of the State upon the night in question is condemned both by the Turlington Act and by the Alcoholic Beverage Control Act. *S. v. Barnhardt,* 230 N.C. 223, 52 S.E. 2d 904; *S. v. Wilson,* 227 N.C. 43, 40 S.E. 2d 449; *S. v. Carpenter,* 215 N.C. 635, 3 S.E. 2d 34; *S. v. Davis, supra; S. v. Epps,* 213 N.C. 709, 197 S.E. 580; *S. v. Langley,* 209 N.C.

178, 183 S.E. 526. As a matter of fact, all undercover agents of the State Alcoholic Beverage Control Board are authorized "to see that all the laws relating to the sale and control of alcoholic beverages are observed and performed." G.S. 18-39.

This statutory law furnished full authorization for the procedure used by the State's witness and placed upon him the duty of enforcing the provisions of both the Turlington Act and the Alcoholic Beverage Control Act. The State's evidence was clear, unambiguous and susceptible of only one construction. Therefore, it was not error for the court to charge the jury that if it found beyond a reasonable doubt that the evidence offered by the State was true, the burden being upon the State to so satisfy them, then it would be their duty to return a verdict of guilty as charged; otherwise, to return a verdict of not guilty. *S. v. Baker,* 229 N.C. 73, 48 S.E. 2d 61; *S. v. Dickens,* 215 N.C. 303, 1 S.E. 2d 837; *S. v. Langley, supra.*

The solicitor has the duty of developing the case for the State and he may call any or all of the witnesses subpoenaed for the prosecution, but his failure to call a particular witness does not constitute reversible error. *S. v. Harris,* 166 N.C. 243, 80 S.E. 1067; *S. v. Smallwood,* 75 N.C. 104.

The defendant strongly argues that the court committed error in that portion of the charge which relates to the evidence of the undercover agent by failing to instruct the jury to scrutinize his testimony as that of an interested or biased witness. The defendant made no request in writing for special instructions on this point. His oral request made at the conclusion of the charge was too late. *S. v. Hicks,* 229 N.C. 345, 49 S.E. 2d 639; *S. v. Spencer,* 225 N.C. 608, 35 S.E. 2d 887; *S. v. Spillman,* 210 N.C. 271, 186 S.E. 322. However, the presiding judge substantially complied with this belated request by saying to the jury, "Yes, sir, gentlemen, you may scrutinize his credibility; but if you find what he said is true, and beyond a reasonable doubt, it would be your duty to return a verdict of: 'Guilty as charged.'" *S. v. Love,* 229 N.C. 99, 47 S.E. 2d 712.

The use of the word "may" instead of "should" in this excerpt from the charge is not prejudicial. *Green v. Chrismon,* 223 N.C. 724, 28 S.E. 2d 215; *Felton v. Felton,* 213 N.C. 194, 195 S.E. 533; *Rector v. Rector,* 186 N.C. 618, 120 S.E. 195; *Jones v. Commissioners,* 137 N.C. 579, 50 S.E. 291; *Manufacturing Co. v. Brower,* 105 N.C. 440, 11 S.E. 313; *Johnston v. Pate,* 95 N.C. 70; *Pelletier v. Saunders,* 67 N.C. 261.

A careful examination of the authorities relied upon by the appellant discloses no principle of law which militates against the position here stated. On the whole record, it appears that the defendant had a fair trial and that there is no reversible error.

No error.