**STATE of Iowa, Appellee,**

v.

**John Lee DAVIS, a/k/a David Lee Davis, Appellant.**

**No. 53694.**

Supreme Court of Iowa.

March 10, 1970.

Ben E. Kubby and John P. Roehrick, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

MOORE, Chief Justice.

About 10:00 p. m. September 29, 1968, defendant was arrested with another juvenile, Carl Pilkington, after they were seen by two deputy sheriffs attempting to break and enter a garage owned by Mabel Edwards at 1712 Williams Street, Des Moines, Polk County, Iowa. After Miranda warnings each admitted participation in the attempt to enter the garage and were held in juvenile court custody.

On October 18 after reviewing the past record of defendant Davis the juvenile court judge found he was not amenable to the processes of the juvenile court and ordered the charge referred to the Polk County Attorney for action before the criminal division of the court. Defendant was thereafter indicted, tried, convicted

and sentenced to a period of not to exceed five years in the men's reformatory for the crime of attempting to break and enter in violation of Code section 708.10. He has appealed. We affirm.

Defendant assigns one error: "That the court erred in refusing to instruct upon the issue of entrapment as concerned an informant as the means by which the defense of entrapment could be established, thereby denying defendant of his right to be fully instructed upon all issues."

Deputy Sheriff Robert Slycord testified that about 9:30 p. m. September 29, 1968 he and deputy Allgood stationed themselves near Mrs. Edwards' garage, in about 45 minutes they observed two men sneak up behind the garage, remove a window and one start to enter with the assistance of the other. The deputies moved closer and shined a flashlight on the two at the garage. Pilkington was immediately taken into custody but defendant Davis ran from the scene and was soon thereafter arrested at his mother's home about a block from the scene. Pilkington's home was also nearby.

Deputy Allgood gave like testimony. He knew Davis from earlier contacts and was able to identify him when the flashlight was used at the scene. Both deputies testified Pilkington and Davis were given warnings of their constitutional rights and on the way to jail each admitted attempting to break and enter Mrs. Edwards' garage that evening.

On cross-examination deputy Slycord stated he was acquainted with Pilkington, he was in the area of 1712 Williams in the afternoon or early evening of September 29 and had a conversation with Pilkington. Slycord's cross-examination includes:

"Q. Yes. And at that time, Mr. Pilkington advised you that he was going to enter into that garage, isn't that true? A. That's true.

"Q. Yes. And he said that this defendant, did not want him to go into that garage, isn't that true? A. That's not true.

"Q. Isn't it true, Mr. Slycord, that you advised Mr. Pilkington to make the robbery or to proceed with the robbery? Isn't that true, sir? A. That's true, yes.

"The information that I received from Mr. Pilkington was the fact that he told me that he was going to rob the rear of the garage and break into the place that night. * * *

"Q. Well, in the afternoon or early evening of September 29, you did talk to Pilkington and you did tell him to perform the robbery is that right? A. I didn't tell him to, he told me he was going to.

"Q. And you told him to go ahead and do it, isn't that right? A. I told him to use his own judgment, because he was going to be the one that was in trouble."

On redirect examination Slycord stated: "When I had occasion to talk to Mr. Pilkington, earlier that day, I did not suggest the B. & E. to him or to break and enter, and I informed this person at that time that they would be arrested if they attempted to do this. There was no suggestion by me of continuing with this crime."

On recross-examination Slycord stated: "I did not do anything to prevent this minor from perpetrating the crime. All I told him was that I would put him under arrest for B. & E. if he did that."

His redirect examination included: "On the Direct Examination, I was asked whether or not I advised Mr. Pilkington to make the robbery or proceed with the robbery. What I meant by that was that if he went ahead with the robbery, he was going to get arrested for B. & E. I did not ever actually tell this individual to attempt to rob or break into this garage."

After the State rested its case in chief and defendant's motion for a directed verdict had been overruled the State made a motion in limine out of the presence of the

jury. It sought to avoid any inquiry by defense counsel of the outcome of any charges in juvenile court against Pilkington.

During discussion of the motion in limine the trial court asked what is "the situation with Carl Pilkington?" to which the assistant county attorney responded: "Apparently, Mr. Pilkington has been an informer for the sheriff's department and there has been a series of breakings and enterings in which Mr. Pilkington had been involved. Mr. Pilkington has given information on a series of these matters and action has been taken in some of these matters, but in this particular instance no action has been taken against Mr. Pilkington to the best of my knowledge.

"The only purpose that this would serve then in bringing this out before this jury at this time would be to prejudice the case against the State and leaving the inference that one person is being punished and the other is not, which is not the case in this particular situation."

The trial court overruled the State's motion in limine. Trial in the presence of the jury was then resumed. No mention of the assistant county attorney's remarks was made in the presence of the jury.

Defendant testified he had known Carl Pilkington for approximately two years before the incident, a couple of days before September 29 Pilkington told him he was in trouble, he needed the tools in Mrs. Edwards' garage so he could get money to go to California and he said "no" to Pilkington's suggestion they break into the garage. Defendant further testified that during the morning of September 29 Pilkington "kept pressuring me to go with him that night" but he told Pilkington he would not go and Pilkington left. He stated that evening while riding around Pilkington again mentioned the tools and after again refusing he did go to the garage with Pilkington. He described how they surveyed the area before going to the rear of the garage and how a window was removed. He admitted

running from the scene and later being arrested at his nearby home. He stated he was induced by Pilkington to go to the garage.

Defendant filed this requested instruction: "You are further instructed that in this case the theory of the defense of the Defendant is the principle of entrapment. Entrapment is a complete, legal and proper defense and means that where the criminal design does not originate in the mind of the accused, but was the design originated in the mind of the entrapping officer or other person who lured the defendant into the commission of a crime in order to secure his conviction therefor, the State is estopped from prosecuting therefor and a defendant should not be convicted, under such circumstances.

"In this case, if you find that the criminal design originated, not with the accused, but is conceived in the mind of state or government officials and/or another person, the accused was, by persuasion, deceitful representation or inducement lured into the commission of a criminal act, then you should return a verdict of Not Guilty.

"But if, however, you find from the nature and character of the circumstances there attending and surrounding the Breaking and Entering that the criminal design originated in the mind of the accused or that he acted without the persuasion, inducement or luring of state or government officials and/or another person, then you cannot acquit the defendant on the grounds of Entrapment.

"In determining whether or not the defendant, in doing what he did, acted in on the principle of entrapment, you must bear in mind that the burden of proof is on the State to prove beyond a reasonable doubt that the defendant was not acting on the principle of entrapment. If after considering and weighing all of the evidence, introduced in this case, a reasonable doubt arises in your mind as to whether or not the defendant, in doing what he did, was acting on the principle of entrapment, then

the State has not proven the defendant guilty beyond a reasonable doubt."

The trial court gave an instruction on entrapment by a police officer substantially the same as the above requested instruction but omitted "or other person" where used in the requested instruction. No question is raised on this appeal as to the propriety of the instruction given. Defendant argues the court erred in refusing to give the requested instruction. He contends the government induced him to commit the crime through the officer's use of an informer, namely Carl Pilkington, and that issue should have been submitted to the jury.

■ I. Basically entrapment is the inducement of an innocent person into the commission of a crime by trickery, persuasion or fraud of a government agent. Government action in merely providing the opportunity or facilities for the commission of crime does not constitute entrapment. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249; United States v. Haden, 7 Cir., 397 F.2d 460; United States v. Burkhart, 6 Cir., 347 F.2d 772; Rodriguez v. United States, 5 Cir., 227 F.2d 912; People v. Finkelstin, 98 Cal.App.2d 545, 220 P.2d 934; State v. Love, 229 N.C. 99, 47 S.E.2d 712. See also 22 C.J.S. Criminal Law § 45(2); 14A Words and Phrases, Perm.Ed., "Entrapment".

In State v. Heeron, 208 Iowa 1151, 1154, 226 N.W. 30, 31, we approve this statement contained in a lower court instruction: "However, no man should be convicted of the violation of such laws, where he had no criminal intent to violate the same, but is induced to become a law violator by reason of the arts and wiles of public officials to depart from the path of being a law-abiding citizen into the commission of crime. When the criminal design originates not with the accused, but is conceived in the mind of the state or government officials, and the accused is by persuasion, deceitful representation or induce-

ment lured into the commission of a criminal act, the State is estopped from prosecuting therefor and a defendant should not be convicted under such circumstances."

■ II. The general rule is well established that entrapment does not result from an act of inducement by a private citizen. Pearson v. United States, 5 Cir., 378 F.2d 555; Johnson v. United States, 115 U.S. App.D.C. 63, 317 F.2d 127; Whiting v. United States, 1 Cir., 321 F.2d 72.

In State v. White, 260 Iowa 1000, 1008, 1009, 151 N.W.2d 552, 557, we say: "Defendant cites no Iowa authorities in support of his argument that legal entrapment may be by a private citizen or an accomplice. The weight of authority is to the contrary. Henderson v. United States, 237 F.2d 169, 175, 61 A.L.R.2d 666 (5th Cir.), considers the point and holds and cites authorities that the defense of entrapment is restricted to law enforcement officers. See also State v. Jackson, 243 N.C. 216, 90 S.E.2d 507, 509."

■ III. In his brief defendant concedes the general rule but argues deputy sheriff Slycord was acting through an informant, namely Carl Pilkington, and therefore the claimed inducement conduct of Pilkington was that of the officer. Some of the cited authorities lend support to such a theory if the facts are sufficiently clear. We need not and do not decide this question of law. Defendant's factual contentions are not supported by the record. The dialogue which took place during the motion in limine discussion was not made in the presence of or called to the attention of the jury. The plan to break and enter the garage was conceived in the mind of the apparently boastful teenager Pilkington at least one day before he talked to the deputy. The criminal design was not that of the deputy sheriff.

■ IV. It was the duty of the trial court, even without request, to fairly present the issues to the jury in order that they might have a clear and intelligent

conception of the questions before them. State v. Wheeler, 216 Iowa 433, 435, 249 N.W. 162, and citations. The court's duty to instruct in such matter was confined to material questions of law in the case, whether requested or not, but this would apply only where relevant evidence was produced which would make apparent the materiality of the law claimed applicable thereto. State v. Perry, 246 Iowa 861, 866, 69 N.W.2d 412, 415, and citations.

■ The evidence introduced does not establish a jury question on defendant's theory of entrapment by the use of an informant. His assignment of error is without merit.

■ We conclude defendant had a fair trial and there was ample material evidence to sustain the verdict of guilty.

Affirmed.

All Justices concur, except UHLEN-HOPP, J., who takes no part.