STATE v. LESTER FRANCIS CALDWELL, JACK AYSCUE, DAVID DENNIS QUICK, WILLIAM OLIVER SPENCER, AND ARTHUR MONROE BROWN, JR.

(Filed 15 October, 1958.)

**1. Criminal Law § 7—**

While each case must be decided on its own facts, if a police officer or his agent, for the purpose of prosecution, procures, induces or incites one to commit a crime he otherwise would not commit except for the persuasion, encouragement, inducement and importunity of the officer or agent, the plea of entrapment is good; if the officer or agent does nothing more than afford to the person charged an opportunity to commit the offense, such is not entrapment.

**2. Conspiracy § 7—**

Where the indictment charges the defendants named and "other person or persons to the State unknown," with conspiracy to commit a criminal act, an instruction requiring the jury to find that at least two of the defendants named conspired together in order to convict any of them, cannot be held for error, the instruction being favorable to defendants on this point.

**3. Criminal Law § 7—**

Where the agent of the police testifies that the idea of committing the unlawful act originated with defendants and that they freely accepted his assistance, with evidence for defendants in conflict therewith, the issue of entrapment is for the jury, and its verdict is conclusive thereon.

JOHNSON AND PARKER, JJ., not sitting.

APPEAL by Lester Francis Caldwell, William Oliver Spencer, and Arthur Monroe Brown from Nettles, J., March 10, 1958 Criminal Term, MECKLENBURG Superior Court.

Criminal prosecutions upon two bills of indictment. The bill in No. 27985 charged that Lester Francis Caldwell, William Oliver Spencer, Arthur Monroe Brown, David Dennis Quick, and other person or persons to the State unknown, did unlawfully, wilfully, and feloniously combine, conspire, confederate and plan together to wilfully, maliciously and wantonly injure the Woodland School building by the use of dynamite and other high explosives, etc. The bill in No. 27990 charged that Lester Francis Caldwell and Jack Ayscue did unlawfully, wilfully, maliciously, wantonly, and feloniously injure and damage, and did attempt to injure and damage the Woodland School building by the use of dynamite and other high explosives, etc.

The State's principal witness was Robert Lee Kinley who testified that Caldwell, Spencer and Brown were members of the Klan. "I joined the Klan in January, 1958. I went to Caldwell's with Arthur Brown and they wrote it up out there at Caldwell's house . . . At the time of or prior to the time I signed up I had talked to Officer Ross of the City Police about the Klan, about joining it. As a result of the conversation with Officer Ross, I joined the Klan; it cost $9.00, which was paid by Chief Littlejohn of the Charlotte Police." Kinley testified that on February 5, he, Caldwell, Spencer, Brown, and two others made and burned a cross at the Woodland School in Mecklenburg County. "After the burning of the cross there was a conversation between me and the other defendants about the use of dynamite; Brown, Caldwell, Spencer, and Quick all wanted to ride back by the school and see what kind of activity they had out there and they wanted to go in another automobile, so we went in my car . . . We parked there in front of it and the subject of dynamite came up, about bombing the school. Caldwell first brought it up. I did not make any suggestion about dynamiting the school, but Caldwell, Brown, Quick, and Spencer wanted to throw it the following Wednesday night."

The witness testified as here quoted and summarized, that he, Caldwell, and Spencer went to Monroe in the witness's car to get dynamite. They were unsuccessful but the next day the witness and Caldwell went back to Monroe where the witness furnished the money

and Caldwell paid 75c for two sticks of dynamite. "On Saturday afternoon, February 15, I had notified the police we would take the dynamite to the school at this time. . . . After the dynamite was purchased in Monroe, I was with the dynamite until it was taken to the school. I couldn't afford to let it get out of my sight."

Caldwell, Jack Ayscue and the witness drove to the schoolhouse in the witness's car. The officers were waiting and immediately arrested Caldwell and Ayscue, and recovered the dynamite with fuse and cap attached.

Frank Littlejohn, Chief of Charlotte Police, testified for the State: . . . "Kinley told me plans had been made for using some explosive there on the night of February 12, . . . He said the Klan was unable to procure the dynamite for that occasion which was postponed 'until he could procure some dynamite' . . . I never did make him any promise of a reward for information concerning these defendants. . . .

"The first time I had a conversation with Kinley . . . was in the early part of February; . . . Kinley had at that time been to some of the Klan meetings but I don't think he had paid his dues. The $10 I gave was for the purpose of paying his initiation dues into the Klan; . . . I had several in the organization."

C. N. Ross of the Charlotte Police Department, testified: "It was at or about the time he (Kinley) joined the Klan that I did tell him that there was a reward of $1,000 for the arrest and conviction of persons in connection with the dynamiting here in Charlotte; that was before the cross burning which occurred February 5, . . . before the dynamite was taken by Kinley, Caldwell and Ayscue to the Woodland School."

The officers testified as to admissions by Caldwell and Spencer as to their purpose in using the dynamite at the school. The purpose was publicity in aid of the campaign for membership in the Klan.

Other evidence was introduced by the State which is not repeated here. Only the evidence bearing on the defendants' pleas of entrapment is recited.

In Case No. 27985 the jury returned a verdict of guilty against Caldwell, Spencer, and Brown, and not guilty as to Quick. In No. 27990 the jury returned as to Caldwell a verdict of guilty of "an attempt to unlawfully, wilfully and maliciously to injure and damage the Woodland School building with the use of dynamite." A verdict of not guilty was returned as to Ayscue. From the judgments pronounced on the verdicts, the defendants appealed.

*Malcolm B. Seawell, Attorney General, Harry W. McGalliard, Ass't. Attorney General, for the State.*

*Marvin L. Ritch for defendant, Lester Francis Caldwell, appellant.*

*Henry E. Fisher for defendant, Arthur Monroe Brown, Jr., appellant.*

*Hugh McAuley for defendant, William Oliver Spencer, appellant.*

*Francis M. Fletcher, Jr., Of Counsel for defendants on appeal.*

HIGGINS, J.   The two cases are inseparably linked together. The substantive offense is but part and parcel of the conspiracy. The appellants, for their defenses, rely upon their pleas of entrapment. The courts generally hold that a verdict of not guilty should be returned if an officer or his agent, for the purpose of prosecution, procures, induces or incites one to commit a crime he otherwise would not commit but for the persuasion, encouragement, inducement, and importunity of the officer or agent. If the officer or agent does nothing more than afford to the person charged an opportunity to commit the offense, such is not entrapment. The courts do not attempt to draw a definite line of demarcation between what is and what is not entrapment. Each case must be decided on its own facts. This Court, in two recent cases, has stated the rule as it prevails in this jurisdiction: *State v. Jackson,* 243 N.C. 216, 90 S.E. 2d 507; *State v. Burnette,* 242 N.C. 164, 87 S.E. 2d 191. See also, *State v. Kilgore,* 246 NC. 455, 98 S.E. 2d 346; *State v. Wallace,* 246 N.C. 445, 98 S.E. 2d 473; *State v. Boles,* 246 N.C. 83, 97 S.E. 2d 476; *State v. Nelson,* 232 N.C. 602, 61 S.E. 2d 626; *State v. Love,* 229 N.C. 99, 47 S.E. 2d 712; *State v Godwin,* 227 N.C. 449, 42 S.E. 2d 617.

Appellants contend that if this Court should hold the evidence of entrapment was not sufficient to entitle them to a directed verdict of not guilty, at least they should be given a new trial for errors committed in the court's charge. Particularly, the defendants object to the following: ". . . or you may return a verdict of guilty as to any two of them in the conspiracy case, and not guilty as to the rest, or you may convict all four of them, or you may return a verdict of not guilty as to all four . . ." Preceding the foregoing as a part of the same sentence, the judge had instructed the jury they might return a verdict of guilty of conspiracy as to Brown, Quick, Spencer, and Caldwell, or "you may return a verdict of not guilty . . ." Directly following the part of the charge to which objection was made, also in the same sentence, the court said: ". . . remembering that the burden is upon the State to satisfy you from the evidence in this case, and beyond a reasonable doubt as to the guilt . . ." Actually the purport of the charge was more favorable than defendants were entitled to. In this respect it must be remembered that not only the four men named were indicted for conspiracy with each other, but also with "other person or persons to the State unknown."

There was evidence Ayscue, a fellow named Myers . . . "two other

STATE *v.* CALDWELL.

fellows" attended a meeting, or at least were on hand on one occasion. There was evidence a man in Monroe gave instructions where the dynamite could be procured after Caldwell told him he wanted to bomb the Woodland School. Under the bill any one of the four named could be convicted if he conspired with Ayscue or Myers or the man in Monroe or the "two other fellows," or any one of them. *State v. Wynne,* 246 N.C. 686, 99 S.E. 2d 923. Instead, the court required the State to prove a defendant on trial must have conspired with at least one of the others on trial. The jury acquitted Quick and convicted the other three. There is no indication that the jury misunderstood or drew any unwarranted conclusions from the judge's charge.

Not only in the challenged part, but otherwise, the charge met all legal requirements. The court reviewed the evidence in detail, stated the defendants' contentions fully, and applied the law to the evidence in the case. Especially with reference to the law of entrapment, the instructions were carefully and accurately stated. Taken as a whole, as it must be, the charge contains nothing of which the defendants, or either of them, may justly complain.

The evidence in this case does not disclose a wholesome picture. Neither law nor public conscience will tolerate the use of dynamite as a means of settling racial or other disputes. And while the officers of the law are not infrequently hard put to it to ferret out crime, at the same time it is to be regretted that the police department, through its agent, took such an active part in the events which culminated in the arrest at the Woodland School. The agent, in his own car, made two trips from Charlotte to Monroe for the dynamite which was paid for from the money left after paying "initiation" dues. It was fashioned into a bomb—the agent assisted—and carried to the school in his car. This, after he was told by a police officer, "there was a reward of $1,000 for the arrest and conviction in connection with dynamiting here in Charlotte." The conspiracy here involved originated after the agent was told of the reward. It may be he was directing part of his efforts toward the discovery of past bombings. It may be, however, the crimes here charged were an outgrowth of a larger plan which the agent, by virtue of his membership in the organization, had opportunity to see develop. Anyway, the jury has accepted the view the plan to bomb the school originated with the defendants and that they freely accepted the assistance of Kinley. The issues were of fact. The jury's findings are conclusive. In law there is

No Error.

JOHNSON AND PARKER JJ., not sitting.