STATE OF NORTH CAROLINA v. JAMES PRESTON SWANEY, DEFENDANT APPELLANT HEREIN (CONSOLIDATED FOR TRIAL WITH CASES ENTITLED:
STATE OF NORTH CAROLINA v. WESLEY ST. ARNOLD
— AND —
STATE OF NORTH CAROLINA v. WILLIAM DALLAS FLETCHER)

No. 81

(Filed 20 January 1971)

1. Constitutional Law § 31— identity of informer — effect of nondisclosure on defendant

There is no merit to defendant's contention that the failure of the trial court to compel the State to disclose the identity of an informer deprived him of the right to assert the defense of entrapment, since the question of entrapment did not arise upon the defendant's evidence.

State v. Swaney

2. Constitutional Law § 31— disclosure of identity of informer — circumstances of the case

The propriety of disclosing the identity of an informer depends upon the circumstances of the case.

3. Criminal Law § 7— armed robbery prosecution — question of entrapment

Question of entrapment did not arise in an armed robbery prosecution in which the defendant denied knowledge of the robbery and any participation in it.

4. Robbery § 5— armed robbery prosecution — submission of lesser included offenses

Where the evidence for the State clearly showed an armed robbery and there was no evidence of a lesser offense, the trial court was not required to submit to the jury the lesser included offenses of common law robbery and assault.

5. Criminal Law § 115— submission of lesser included offenses to the jury

The trial court is not required to submit to the jury the question of a lesser offense included in that charged in the indictment, where there is no evidence to support such a verdict.

6. Criminal Law §§ 95, 169— joint trial of defendants — admission of statement implicating nontestifying codefendant — harmless error rule

In a joint trial of three defendants for armed robbery, it was error to admit in evidence a statement made by one defendant to the prosecuting witness, "We have nothing against you; we were broke and needed money," since the use of the word "we" tended to implicate a nontestifying codefendant and thereby deprived him of his right of confrontation on cross-examination; nevertheless, such error was harmless beyond a reasonable doubt when the evidence as to the codefendant's participation came from the testimony of the codefendant himself and from independent testimony not connected with the statement.

7. Robbery § 4— armed robbery prosecution — sufficiency of evidence — testimony that victim was not frightened

Testimony by an armed robbery victim that the defendants "didn't threaten me in any way" did not warrant dismissal of the prosecution, since the victim also testified that one defendant stuck a gun in his face and that "it scared me."

8. Robbery § 1— armed robbery — gist of the offense

The gist of the offense of armed robbery is not the taking but is the taking by force or putting in fear.

9. Robbery § 2— armed robbery indictment — use of "and" in charging the elements of the offense

The fact that an armed robbery indictment charged "endangered and threatened" rather than the statutory language "endangered or threatened" was not fatal. G.S. 14-87.

State v. Swaney

10. **Indictment and Warrant § 9— charge of crime — use of the conjunctive "and"**

   The indictment should not charge a party disjunctively or alternatively in such a manner as to leave it uncertain what is relied on as the accusation against him; the proper way is to connect the various allegations in the indictment with the conjunctive term "and" and not with the word "or."

11. **Robbery § 2— armed robbery indictment — conviction of lesser included offenses**

   An indictment for robbery with firearms will support a conviction of the lesser offenses of common law robbery, assault, larceny from the person, or simple larceny.

12. **Indictment and Warrant § 9— purpose of indictment**

   One of the purposes of the indictment is to enable the defendant to prepare his defense.

13. **Robbery § 2— armed robbery indictment — allegations of assault**

   The fact that the allegations in an armed robbery indictment included a charge of assault does not render the indictment invalid.

14. **Criminal Law § 9; Robbery § 4— armed robbery prosecution — guilt of codefendant — sufficiency of evidence**

   The State's evidence in an armed robbery prosecution was ample to show that a codefendant was a participant in the robbery, either as the driver of the get-away car or as a lookout posted by the other defendants.

15. **Criminal Law § 106— motion to nonsuit — sufficiency of evidence**

   If there is any evidence which reasonably tends to show guilt of the offense charged and from which a jury might legitimately convict, the nonsuit motion should be denied.

16. **Jury § 8— impaneling of jury — absence of defendant from courtroom**

   Defendant in an armed robbery prosecution was not prejudiced by the fact that the jury was impaneled during his absence from the courtroom.

17. **Criminal Law § 92— consolidation of cases**

   It is within the discretion of the judge to consolidate cases.

18. **Criminal Law § 92; Robbery § 2— consolidation of armed robbery prosecutions**

   Armed robbery prosecution of a defendant who participated in the robbery as the driver of the get-away car or as a lookout was properly consolidated with the prosecutions of the two codefendants who actually perpetrated the robbery.

19. **Criminal Law § 85— cross-examination of defendant**

   Trial court in an armed robbery prosecution properly allowed the solicitor to cross-examine defendant about his previous convictions.

APPEAL by defendant Swaney from judgment of *Beal, S.J.,* May 4, 1970 Criminal Session of DAVIDSON County Superior Court.

Defendants, James Preston Swaney (Swaney), Wesley St. Arnold (St. Arnold), and William Dallas Fletcher (Fletcher), in separate bills, were indicted for the armed robbery of Dalton Myers (Myers). The cases were consolidated for trial, and from verdicts of guilty as charged and sentences imposed, notice of appeal was given. Only Swaney perfected his appeal.

The evidence for the State tends to show that Myers operated a fuel business in Thomasville. On 28 February 1970 about 4 p.m. the defendants St. Arnold and Fletcher entered his place. One or both of them stated, "This is a hold up" or "This is a robbery," and each pulled a pistol from his pocket. Fletcher pointed his pistol directly in Myers' face and demanded his wallet, which Myers gave to him. The wallet contained $43. St. Arnold went to a place in the building where a metal money box was located. It was later found that some $105 had been taken from the money box. After Myers gave Fletcher his wallet, the defendants tied Myers' hands and placed him in a small room in the back of his place of business, wiring the door to this room shut. Defendants then left. As they went out the door, Myers heard someone shout "Halt" and heard several shots fired.

Several police officers testified for the State. In substance their testimony is to the effect that SBI Agent Poole had received information that there would be a robbery at Myers' home on Friday, February 27, 1970, or at his place of business on Saturday, February 28, 1970. On the 28th, Poole and Captain Stamey of the Thomasville police force stationed themselves in a diner near Myers' place of business, and other police officers stationed themselves in a boxcar across the street from the Myers Oil Company. About 4 p.m. a Mercury Comet car with an Indiana license parked near Myers' place of business; St. Arnold was driving, Swaney was in the middle, and Fletcher was on the right. St. Arnold and Fletcher got out of the parked car, leaving Swaney. After Fletcher and St. Arnold allegedly robbed Myers and came out the front door of the Oil Company, Agent Poole and Captain Stamey stepped from concealment and called to them to halt. Fletcher turned to run and fired a shot at Poole and Stamey; Poole and Stamey returned the fire. When he

saw the officers, St. Arnold dropped a brown paper sack containing money. Both Fletcher and St. Arnold were immediately arrested. St. Arnold had a pistol in his pocket; another pistol, with four live and two spent cartridges, was found near where Fletcher was arrested.

Officer Harris of the Thomasville police department testified that while the shooting was taking place between Fletcher and Officers Poole and Stamey, he jumped out of the boxcar and ran to the Comet car where he found Swaney sitting under the steering wheel with the motor running. Swaney was arrested and hastily searched. He was searched again at the police station and a .32 caliber pistol with four cartridges in it was found tucked under his belt in the back.

Swaney testified in his own behalf. His evidence tends to show that he was in the vicinity of Thomasville in his Pontiac car going from Greensboro to Lexington on a business trip when the car developed engine trouble. He stopped in Myers' place of business about 3 p.m. to get change to make a telephone call to his brother in Greensboro for assistance. No one answered his brother's telephone, so he parked his car about one-half mile from Myers Oil Company, leaving the keys in the car, and started to hitchhike back to Greensboro. St. Arnold and Fletcher stopped and picked him up. His evidence further tends to show that he did not know that Fletcher and St. Arnold planned to rob the Oil Company; they only told him they were stopping to see a man and would be back in just a few minutes. He remained in the middle of the front seat of the automobile until he heard shots, at which time he moved over to the driver's seat in order to see what was going on. He was not involved in any way with the robbery and had no gun prior to his arrest, but while he was in the back seat of the police car with defendant Fletcher, Fletcher pushed something down under his belt in the back, and this must have been the pistol which was later found by the officers. On cross-examination Swaney admitted that over a period of years from 1956 to 1968 he had been convicted a number of times for breaking and entering, and of larceny from the person, of housebreaking and larceny, unlawful assault and statutory burglary, and escape. He testified he had known Fletcher for about nine years and had served some time with him in the Virginia State Penitentiary. He further testified he met St. Arnold in Indiana, and that some three weeks before

February 28, 1970 he and the other two defendants came to North Carolina separately. About a week before February 28 he visited Fletcher and St. Arnold in a room in a Holiday Inn or Howard Johnson, and on Monday of that week around 6 a.m. he and Fletcher got a room in High Point where he stayed with Fletcher until Tuesday; that on the morning of February 28, 1970, in a Howard Johnson restaurant in Greensboro he saw Fletcher inject himself with a drug called Wyamine, as he had seen him do on several other occasions. These injections seemed to give Fletcher a feeling of well-being and caused him to become very excited. It took about 24 hours for the effect of this injection to wear off.

From a verdict of guilty as charged and judgment pronounced thereon, defendant Swaney appealed to the Court of Appeals. The case was transferred to this Court under its transferral order of 31 July 1970.

*Attorney General Robert Morgan and Deputy Attorney General Ralph Moody for the State.*

*Ned A. Beeker for defendant appellant.*

MOORE, Justice.

Defendant in his brief states the questions involved in the appeal in a somewhat general manner as follows:

> "The many questions to be determined in this Appeal are set out under each of the Exceptions hereinafter, and Appellant contends that there is no one question to be determined unless same would be the ultimate questions of whether or not the evidence of the State was insufficient to support the conviction of the defendant, and whether or not the Bill of Indictment upon which the Appellant was tried was insufficient and invalid as a matter of law, and whether or not prejudicial error was present in the trial of the case which would warrant a new trial for this appealing defendant."

[1] Defendant does make numerous assignments of error, the first of which is that the trial court erred in failing to grant his motion to disclose the identity of the informer in this case, thus denying him the right to assert the defense of entrapment. All the evidence for the State indicates that some of the police

officers received their information about the robbery in question from an unidentified informer. The State contends, however, that the motion to which Swaney referred, as the record shows, was submitted to the court by Jerry B. Grimes, court-appointed counsel for William Dallas Fletcher, and was not joined in by defendant Swaney or his attorney. Hence, the State contends Swaney cannot avail himself of this motion on appeal.

Conceding *arguendo* that the motion does apply to Swaney, none of the defendants have testified that any police officer or any other person at any time sought to induce, procure, or incite the defendants, or any of them, to commit a crime. The evidence to the contrary discloses that the officers only knew that there was a possibility that there would be a robbery. They did not know the exact time it would take place or the identity of the persons who might attempt it. Defendant Swaney testified at great length at the trial, but did not say that any officer or any other person tried to induce, incite, or procure the commission of this crime. His defense is not entrapment, but that he committed no crime. Under these circumstances, we hold that the trial court correctly denied the motion to require the officers to disclose the identity of the informer.

[2] "It is the general rule, subject to certain exceptions and limitations . . . that the prosecution is privileged to withhold from an accused disclosure of the identity of an informer." Annot., 76 A.L.R. 2d 262, 271. "The privilege is founded upon public policy, and seeks to further and protect the public interest in effective law enforcement. It recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officers, and by preserving their anonymity, encourages them to perform that obligation. The privilege is designed to protect the public interest, and not to protect the informer." *Id.* at 275; *Roviaro v. United States,* 353 U.S. 53, 1 L. Ed. 2d 639, 77 S.Ct. 623 (1957). The propriety of disclosing the identity of an informer depends on the circumstances of the case. *Roviaro v. United States, supra; State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53; *State v. Boles,* 246 N.C. 83, 97 S.E. 2d 476.

[3] Justice Higgins, in *State v. Caldwell,* 249 N.C. 56, 105 S.E. 2d 189, states:

" . . . The courts generally hold that a verdict of not guilty should be returned if an officer or his agent, for the

State v. Swaney

purpose of prosecution, procures, induces or incites one to commit a crime he otherwise would not commit but for the persuasion, encouragement, inducement, and importunity of the officer or agent. If the officer or agent does nothing more than afford to the person charged an opportunity to commit the offense, such is not entrapment. The courts do not attempt to draw a definite line of demarcation between what is and what is not entrapment. Each case must be decided on its own facts. This Court, in two recent cases, has stated the rule as it prevails in this jurisdiction: *State v. Jackson,* 243 N.C. 216, 90 S.E. 2d 507; *State v. Burnette,* 242 N.C. 164, 87 S.E. 2d 191. See also, *State v. Kilgore,* 246 N.C. 455, 98 S.E. 2d 346; *State v. Wallace,* 246 N.C. 445, 98 S.E. 2d 473; *State v. Boles,* 246 N.C. 83, 97 S.E. 2d 476; *State v. Nelson,* 232 N.C. 602, 61 S.E. 2d 626; *State v. Love,* 229 N.C. 99, 47 S.E. 2d 712; *State v. Godwin,* 227 N.C. 449, 42 S.E. 2d 617."

According to the defendant's evidence in the case at bar, he knew nothing about the robbery and did not participate in it. Therefore, the question of entrapment does not arise. *State v. Boles, supra.* See 36 N. C. L. Rev. 413; Annot., 61 A.L.R. 2d 677; 2 Strong's N. C. Index 2d, Criminal Law § 7.

[4, 5] The defendant next contends that the court erred in not submitting to the jury on its own motion the lesser included offenses of common law robbery and assault. The evidence for the State clearly shows an armed robbery; there is no evidence of a lesser offense. The defendant is guilty of armed robbery or not guilty. The trial court is not required to submit to the jury the question of a lesser offense, included in that charged in the indictment, where there is no evidence to support such a verdict. *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481; *State v. Bridges,* 266 N.C. 354, 146 S.E. 2d 107; *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545. This assignment is without merit.

[6] Some hours after the robbery, Myers was allowed to go to the jail and in the presence of a Thomasville police officer asked the defendant St. Arnold, "What did they have against me to rob me?" Over objection, Myers was allowed to testify that St. Arnold replied, "We have nothing against you; we were broke and needed some money." The trial court sustained the objection as to defendant Swaney and Fletcher but admitted the statement

as to St. Arnold. St. Arnold did not testify at the trial. Defendant contends that under *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S.Ct. 1620, and *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492, this was error. Prior to *Bruton,* limiting the statement to the defendant who made it would have been sufficient. However, Justice Sharp in *State v. Fox, supra,* states the post-*Bruton* rule to be as follows:

> "The result is that in joint trials of defendants it is necessary to exclude extrajudicial confessions unless all portions which implicate defendants other than the declarant can be deleted without prejudice either to the State or the declarant. If such deletion is not possible, the State must choose between relinquishing the confession or trying the defendants separately. The foregoing pronouncement presupposes (1) that the confession is inadmissible as to the codefendant (see *State v. Bryant, supra* [250 N.C. 113, 108 S.E. 2d 128]), and (2) that the declarant will not take the stand. If the declarant can be cross-examined, a co-defendant has been accorded his right to confrontation. See *State v. Kerley, supra* [246 N.C. 157, 97 S.E. 2d 876], at 160, 97 S.E. 2d at 879."

Applying that rule to the facts here, it was error to admit that portion of St. Arnold's statement which, by the use of the word "we," might have implicated Swaney. Swaney was thereby denied his constitutional right of confrontation on cross-examination guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States. Nevertheless, as stated by Justice Huskins in *State v. Brinson,* 277 N.C. 286, 295, 177 S.E. 2d 398, 404:

> " . . . [A]ll federal constitutional errors are not prejudicial. Some constitutional errors in the setting of a particular case 'are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction . . . [B]efore a federal constitutional error can be held harmless, the Court must be able to declare a belief that it was harmless beyond a reasonable doubt.' *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S.Ct. 824 (1967). In deciding what constituted harmless error in *Fahy v. Connecticut,* 375 U.S. 85, 11 L. Ed. 2d 171, 84 S.Ct. 229 (1963), the Court said: 'The question is whether there

State v. Swaney

is a reasonable possibility that the evidence complained of might have contributed to the conviction.' "

Accord, *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S.Ct. 1726 (1969).

The State's evidence as to the robbery itself is overwhelming and is not denied. The evidence as to Swaney's participation was from independent testimony not connected with the statement itself, and from the testimony of Swaney himself. The statement does not involve evidence in any sense "crucial" or "devastating." We therefore hold that the admission of St. Arnold's statement was harmless error beyond a reasonable doubt. *Harrington v. California, supra; Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S.Ct. 824 (1967) ; *State v. Brinson, supra.* See also *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S.Ct. 210 (1970). This assignment is overruled.

**[7, 8]** The next assignment of error relates to the sufficiency of the evidence to prove the offense charged. The portion of the indictment involved reads, " . . . with the use and threatened use of a certain firearm, to-wit: a certain pistol, whereby the life of Dalton Myers was endangered and threatened. . . . " The defendant contends that since Myers testified, "They didn't threaten me in any way," that the State has failed to prove an essential element of armed robbery as charged in the indictment and as required by G.S. 14-87; and that this constitutes a fatal variance between the indictment and proof. Myers did, however, testify that one of the defendants stuck a gun in his face and that "it scared me." The gist of the offense of armed robbery is not the taking but the taking by force or putting in fear. *State v. Rogers,* 273 N.C. 208, 159 S.E. 2d 525; *State v. Mull,* 224 N.C. 574, 31 S.E. 2d 764. The testimony by Myers that he was scared is sufficient to meet the requirements of the indictment and the statute.

**[9, 10]** Defendant further contends the indictment was defective since it charged "endangered and threatened," and G.S. 14-87 reads "endangered or threatened." "Where a statute sets forth disjunctively several means or ways by which the offense may be committed, a warrant thereunder correctly charges them conjunctively." 4 Strong's N. C. Index 2d, Indictment and Warrant § 9, p. 353; *State v. Chestnutt,* 241 N.C. 401, 85 S.E. 2d 297.

The indictment should not charge a party disjunctively or alternatively, in such a manner as to leave it uncertain what is relied on as the accusation against him. The proper way is to connect the various allegations in the indictment with the conjunctive term "and," and not with the word "or." *State v. Helms,* 247 N.C. 740, 102 S.E. 2d 241; *State v. Jones,* 242 N.C. 563, 89 S.E. 2d 129; *State v. Albarty,* 238 N.C. 130, 76 S.E. 2d 381. The indictment correctly charged the offense of armed robbery.

[11-13]   Next, defendant contends that the indictment is invalid in that it alleged an assault, and G.S. 14-87 does not provide for allegations of assault. There is no merit to this contention. An indictment for robbery with firearms will support a conviction of the lesser offenses of common law robbery, assault, larceny from the person, or simple larceny. *State v. Wenrich,* 251 N.C. 460, 111 S.E. 2d 582; *State v. Bell,* 228 N.C. 659, 46 S.E. 2d 834. One of the purposes of the indictment is to enable the defendant to prepare his defense. *State v. Banks,* 263 N.C. 784, 140 S.E. 2d 318. The allegation in the indictment simply includes the charge for an assault which would be a lesser included charge in an indictment for robbery with firearms. If anything, the addition of the assault charge would be of aid to the defendant in preparing his defense and would not be harmful.

[14, 15]   Defendant next contends that the evidence is not sufficient to support the conviction, arguing that this case is closely analogous to *State v. Aycoth,* 272 N.C. 48, 157 S.E. 2d 655. In *Aycoth* this Court reversed a conviction of codefendant Shadrick for aiding and abetting because of insufficient evidence. The evidence in that case, considered in the light most favorable to the State, tends to show: The robbery occurred inside the store. Aycoth was in the store "no more than two or three minutes." There is no evidence that Shadrick moved from where he was sitting on the right (passenger) side of the front seat of the car. He had no conversation with Mrs. Stevenson, the lady robbed. There is no evidence that he had a weapon of any kind. Mrs. Stevenson testified that she could see Shadrick and Shadrick could have seen her through the plate glass window but Shadrick "never did look around." There is no evidence that Shadrick could or did observe what was taking place inside the store. There is evidence that Aycoth concealed his pistol before he stepped out of the store. There is no evidence that Shadrick shared in the proceeds of the one hundred dollar robbery beyond

the fact that Shadrick, when arrested, had about fifteen dollars and some change on him. There were weapons under the seat of the car when Aycoth and Shadrick were arrested. However, there is no evidence that Shadrick owned or controlled the car; to the contrary, an officer testified Aycoth stated that he was the owner of the car. The case at bar is distinguishable. The evidence here is that defendant Swaney, with a long criminal record, had served time with Fletcher in the penitentiary in Virginia and that he had known Fletcher for about nine years; that some three weeks before this crime was committed he was in the State of Indiana with the defendants St. Arnold and Fletcher; that on their return to North Carolina he visited with St. Arnold and Fletcher in a motel, and that he and Fletcher occupied a motel room together on Monday and Tuesday of the week of the robbery; that the three defendants were together in Greensboro the morning of the robbery; that about one hour before the robbery Swaney was in Myers' place of business, and that he parked some one-half mile from Myers' fuel business, leaving the key in his car; that shortly before the robbery the defendants St. Arnold and Fletcher picked him up in a car with an Indiana license, and he went with them to the scene of the robbery; that St. Arnold and Fletcher left the car in which Swaney was sitting with caps pulled down and goggles over their eyes, and as St. Arnold left he secured a pistol from the car; that when the robbery was completed defendant Swaney was found under the steering wheel with the motor running, and when arrested and thoroughly searched he had a pistol under his belt in the back. This evidence is ample to show that he was in fact a participant in the robbery, either as the driver of the get-away car or as a lookout posted by the other defendants, standing by to lend assistance if and when it should become necessary. If there is any evidence which reasonably tends to show guilt of the offense charged and from which a jury might legitimately convict, the nonsuit motion should be denied. *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374.

In *State v. Aycoth, supra,* this Court quotes with approval:

" 'All who are present at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose to the knowledge of the actual perpetrator, are principals and equally guilty. (Citations.) An aider and abettor is one who advises, coun-

sels, procures, or encourages another to commit a crime. (Citations.) To render one who does not actually participate in the commission of a crime guilty of the offense committed, there must be some evidence tending to show that he, by word or deed, gave active encouragement to the perpetrator of the crime or by his conduct made it known to such perpetrator that he was standing by to lend assistance when and if it should become necessary. (Citations.)' *State v. Ham,* 238 N.C. 94, 97, 76 S.E. 2d 346, 348; *State v. Burgess,* 245 N.C. 304, 309, 96 S.E. 2d 54, 58; *State v. Horner,* 248 N.C. 342, 350, 103 S.E. 2d 694, 700; *State v. Hargett,* 255 N.C. 412, 415, 121 S.E. 2d 589, 592; *State v. Gaines,* 260 N.C. 228, 231, 132 S.E. 2d 485, 487."

Under the facts in the present case, the trial court correctly overruled defendant's motion for judgment as of nonsuit.

[16] After the selection of the jury, the record shows: "The Jury was impaneled (in the absence of the defendants but in the presence of counsel for defendants)." Defendant contends it was error to impanel the jury in his absence. Under the procedure in North Carolina, after the jurors have been selected and sworn, the clerk simply recites that the jurors having been duly selected and sworn are impaneled to try the case before them. This is a ministerial act done in this case in the presence of the defendant's counsel and without objection. We do not think any of Swaney's rights were affected or that he was prejudiced in any way by the fact that he was absent when the jury was impaneled. *State v. Arnold,* 258 N.C. 563, 573, 129 S.E. 2d 229, 235; Annot., 26 A.L.R. 2d 762, 770. Under these circumstances, no error is made to appear.

[17, 18] Defendant next contends that the court erred in consolidating the case of this defendant with those of St. Arnold and Fletcher for trial. It is within the discretion of the judge to consolidate cases, and no abuse of discretion is shown. *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506; *State v. Grundler,* 251 N.C. 177, 111 S.E. 2d 1; *State v. Bryant,* 250 N.C. 113, 108 S.E. 2d 128.

[19] Finally, the defendant contends that the trial judge erred in allowing the solicitor to cross-examine defendant Swaney about previous convictions. Where defendant testifies in his own behalf, it is common for the solicitor on cross-examination to

ask him, for the purpose of impeachment, if he had not theretofore been convicted and sentenced to prison for other crimes, and the affirmative answer of defendant is competent as affecting his credibility as a witness. *State v. Goodson,* 273 N.C. 128, 159 S.E. 2d 310; *State v. Sheffield,* 251 N.C. 309, 111 S.E. 2d 195; *State v. Holder,* 153 N.C. 606, 69 S.E. 66; Stansbury's N.C. Evidence § 112 (2d ed., 1963). This assignment is overruled.

We have carefully examined defendant's other assignments and find no prejudicial error.

No error.