STATE OF NORTH CAROLINA v. CHARLES RICHARD BRADSHAW

No. 7115SC501

(Filed 20 October 1971)

1. **Criminal Law § 164— denial of nonsuit motion at close of State's evidence — waiver by defendant**

    The denial of defendant's motion for nonsuit made at the conclusion of the State's evidence is waived by the defendant's introduction of evidence and is not available to him on appeal.

2. **Narcotics § 4— possession of amphetamine for sale — sufficiency of evidence**

    In a prosecution charging defendant with the unlawful possession of amphetamines for the purpose of sale, the evidence of defendant's guilt was sufficient to go to the jury.

3. **Criminal Law § 7; Narcotics § 4— sale of amphetamines — evidence that undercover agent had a gun — entrapment**

    The defense of entrapment became a jury question in a prosecution for the unlawful possession of amphetamines for purpose of sale, where the defendant testified that he never would have sold the drugs to an undercover agent of the police but for the fact that a police informant, who was accompanying the agent, remarked to the defendant in the presence of the agent, "We try to get along with people, but he [the agent] has got a gun," and where there was no evidence that the agent denied that he had a gun.

APPEAL by defendant from *Bickett, Judge,* 8 March 1971 Session, Superior Court of ALAMANCE County.

Defendant, an indigent, was tried on a bill of indictment, proper in form, charging that on 7 November 1969, he did unlawfully, wilfully and feloniously have in his possession stimulant drugs, to wit: amphetamine, for the purpose of sale and in violation of G.S. 90-113.2(5). At the trial on 10 March 1971, the defendant, through his court-appointed counsel, tendered a plea of not guilty.

The evidence for the State tended to show that a confidential informant called defendant by telephone several days prior to 7 November 1969, and the defendant told the informant that he had no drugs at that time. The State's evidence also tended to show that on 7 November 1969 the informant called defendant, and a meeting was arranged for that evening at Ritchie's Drive-In. Officer Thomas L. Scott of the Chapel Hill police department was brought into the case by the Burlington police department to act as an undercover agent, since he was

not known in the area. Detective O. F. Hoggard of the Burlington police department testified that at about 9:30 p.m. he searched Officer Scott before he left to meet with the defendant, and that Officer Scott had no weapon on his person at the time of the search. The evidence tended to show that Officer Hoggard kept Officer Scott's weapon and I.D. card at the Burlington police station.

Officer Scott testified that the confidential informant had been acting in close conjunction with him on this particular case for about three weeks, and this included the time when the informant telephoned the defendant on two different occasions. Officer Scott's testimony tended to show that the informant was with him when the meeting took place at the drive-in at about 10:30 p.m.; that the defendant got into Officer Scott's car; that the officer then asked defendant if defendant had brought the pills he was supposed to bring and defendant answered that he had; that Officer Scott then asked the price and defendant said the price was $25; and that the pills consisted of 23 amphetamines, three pills of a legal variety and one barbiturate. Officer Scott also testified that at no time did defendant ever refuse to sell the drugs to them but that there was some haggling over price and a final figure of $25 was settled upon.

Upon cross-examination of Officer Scott, the evidence tended to show that Scott was not armed on this occasion, but that prior to drugs being mentioned the informant might have told defendant that Officer Scott was armed. The evidence tended to show that Officer Scott never denied to defendant or anyone else that he was armed or had a gun when defendant was told by informant that Scott was armed. Officer Scott testified that after a brief conversation with defendant, he drove to the Burlington police station where he gave the pills to Detective Hoggard who sent them to the S.B.I. laboratory for analysis. At the close of the State's evidence, defendant's motion to dismiss was denied.

The defendant's evidence tended to show that on 7 November 1969 at about 6:00 p.m. he received a telephone call from the confidential informant who wanted to purchase drugs from him; that defendant stated in response that he had no drugs and did not wish to sell any. The defendant then testified that at about 10:00 p.m. that same night, defendant was called again

by the informant, who told defendant he had heard defendant had drugs to sell; that defendant told him that all he had was a prescription issued by Dr. Ivey through the Mebane Drug Company; and that the informant stated he still wanted to talk to defendant and would defendant meet him at Ritchie's Drive-In. The defendant's evidence tended to show that defendant agreed and went to the drive-in alone; that he arrived at about 10:20 p.m., at which time the informant and Officer Scott came across the parking lot and got into the car with him; that Officer Scott was in the front seat and the informant was in the back seat; that the informant then asked the defendant if he had brought the drugs; and that defendant answered that he had drugs with him, but they were prescribed and he always carried them. The defendant testified that when he refused to sell the drugs, the informant said: "We try to get along with people, but we have got a gun"; and that the informant stated that Officer Scott had a gun in his back pocket. The defendant's evidence tended to show that at this point, additional money was offered for the drugs and he went ahead and sold them, because, according to the defendant, he wanted to get away. The defendant testified that he refused to sell the drugs at least three times and would never have sold them but for the mention of the gun.

On cross-examination, the defendant stated that he went to the drive-in in response to a telephone call he received at about 10:00 p.m. on the night in question; that he did not go there for the purpose of selling drugs; and that he never saw a gun at any time in the car and nobody held one on him. Defendant's renewed motion to dismiss at the close of all the evidence was denied. Defendant requested special instructions on the issue of entrapment, but the request was refused by the court. The jury returned a verdict of guilty and defendant moved to set the verdict aside as against the greater weight of the evidence. The motion was denied and the defendant was sentenced to a term of not less than four years nor more than five years.

On appeal the defendant contends the trial court erred in denying defendant's motion to dismiss at the close of the State's evidence. The defendant also contends that it was error for the trial court to refuse defendant's written request for special instructions on the issue of entrapment.

*Attorney General Morgan by Assistant Attorneys General Melvin and Ray for the State.*

*Donald S. Kelly for defendant appellant.*

MORRIS, Judge.

**[1, 2]** Defendant appellant first assigns as error as the court's denial of his motion to dismiss at the conclusion of the State's evidence. The denial of a motion for nonsuit made at the conclusion of the State's evidence was waived by the defendant's introduction of evidence and is not available to him on appeal. *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789 (1971). In any event, the evidence was sufficient to go to the jury.

**[3]** Defendant appellant next contends that the court erred in refusing defendant's written request for special instructions to the jury on the issue of entrapment. Only a portion of the court's charge to which defendant excepted was included in the record on appeal and is as follows: " . . . and you are instructed Ladies and Gentlemen of the Jury, that there was *no evidence as to entrapment* in this case, that he (defendant) was given the opportunity to commit the crime and was not induced to do so." (Emphasis added.)

> "Where the charge of the court is not in the record, it will be presumed that the court correctly instructed the jury on every phase of the case, with respect to both law and evidence, and the denial of a request for special instructions cannot be held prejudicial." 1 Strong, N.C. Index 2d, Appeal and Error, §§ 42, 46, pp. 185, 186, 191; *State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596 (1968).

The assignment of error for failure to instruct necessitates inclusion of the entire charge in the record. The assignment of error for failure to instruct in this case might, therefore, for sound reasons, be dismissed as ineffectual. Due to the possible prejudice to the defendant appellant, however, we choose to consider the question sought to be raised. *State v. Brooks,* 225 N.C. 662, 36 S.E. 2d 238 (1945).

We believe the above excerpt from the charge appearing in the record that there was no evidence of entrapment is erroneous and to recognize the error does not require consideration of the whole charge.

"Whether the defendant was entitled to have the defense of entrapment submitted to the jury is to be determined by the evidence. Before a Trial Court can submit such a defense to the jury there must be some credible evidence tending to support the defendant's contention that he was a victim of entrapment, as that term is known to the law." *State v. Burnette,* 242 N.C. 164, 173, 87 S.E. 2d 191, 197 (1955) ; see also 3 Strong, N.C. Index 2d, Criminal Law, § 121.

From the facts of this case we believe there was sufficient credible evidence to submit the issue of entrapment to the jury. The prevailing rule in this jurisdiction is that mere initiation, instigation, invitation or temptation by enforcement officers is not sufficient to establish the defense of entrapment. It is also necessary to show that the defendant would not have committed the offense except for the persuasion, encouragement, inducement, and importunity of the officer or agent. 2 Strong, N.C. Index 2d, Criminal Law, § 7; *State v. Swaney,* 277 N.C. 602, 178 S.E. 2d 399 (1971). From the record it appears that both the informant and the undercover agent in this case were connected with the State, and if they induced the defendant to commit the offense, it would constitute a good defense. *State v. Jackson,* 243 N.C. 216, 90 S.E. 2d 507 (1951). The evidence is conflicting as to the presence of a gun, but Officer Scott never denied that he did have a gun when, in the presence of the defendant the informant suggested that the officer did have a gun. Credible evidence of persuasion used by the State to move the defendant to criminal conduct requires the court to instruct the jury as to the legal principle of entrapment and the weight to be given such evidence is for determination by the jury. *State v. Caldwell,* 249 N.C. 56, 105 S.E. 2d 189 (1958) ; *State v. Yost,* 9 N.C. App. 671, 177 S.E. 2d 320 (1970). The court's instruction that there was no evidence of entrapment was erroneous.

New trial.

Judges BRITT and PARKER concur.