State v. Castor

---

STATE OF NORTH CAROLINA v. J. C. CASTOR

No. 7419SC178

(Filed 6 February 1974)

**Homicide § 15; Criminal Law §§ 77, 168, 169— first degree murder — silence of defendant as admission — no prejudicial error**

In a first degree murder prosecution the trial court erred in allowing into evidence testimony by a witness that defendant made no denial when she told an SBI agent in the presence of defendant that defendant and a third person accompanied her to the victim's home, that defendant was in the house when the shot was fired, and that they went to the house for the purpose of robbing the victim, and the court erred in instructing the jury that they could consider defendant's

silence in the face of the witness's statements as evidence of his guilt; however, defendant was not sufficiently prejudiced by the testimony and instruction to warrant a new trial. Fifth Amendment to U. S. Constitution; Art. I, § 23 of the N. C. Constitution.

ON *certiorari* to review judgment of *Collier, Judge,* entered at the 15 November 1971 Session of Superior Court held in CABARRUS County. Certiorari was allowed on 17 October 1973 and the case argued in the Court of Appeals on 23 January 1974.

By indictment, proper in form, defendant was charged with the murder of Pearl Walker (Miss Walker) on 24 June 1971. He was placed on trial for first-degree murder and pleaded not guilty.

The evidence most favorable to the State is summarized in pertinent part as follows:

Edith Crisco, as a witness for the State, testified: She was 19 at the time of the trial. She spent a large part of 24 June 1971 with defendant and Phillip Scearcy, riding around in an automobile, drinking beer, and doing other things. On the night of 24 June 1971, the three of them went to Miss Walker's home (shown by other testimony to be in a rural area of Cabarrus County). Prior to going there she had heard defendant say they were going to the Walker home to get some money. At the time they arrived at the home, defendant was armed with a sawed-off shotgun and Scearcy was armed with a rifle. They stopped the car some distance from the Walker home; defendant got out of the car and went to the home, leaving her and Scearcy in the car. She "thought" Scearcy went to the house later. After defendant left the car, she drove it up closer and parked beside the house. She heard voices in the house and heard Miss Walker say, either once or twice, "Lord, have mercy on me." Thereafter, she heard one shotgun blast and the only people in the house at that time were defendant and Miss Walker. During the time defendant was in the house he had a towel wrapped around his head, covering most of his face, and had his fingers covered with Scotch tape. After defendant emerged from the house, she (Crisco), defendant and Scearcy left and went to Gerald Stirewalt's mobile home. Later, defendant buried the shotgun.

Other testimony showed: Police officers went to the Walker home at about 11:30 a.m. on Friday (sometimes referred to as June 24 but at other times as June 25). The home is located in the country, some 43 feet west of Cox Mill Road. They found

the home completely "ransacked," with drawers pulled out of bureaus and contents scattered over the floor, the telephone wires had been cut, mattresses were thrown off the beds, carpet had been torn up, pictures on the wall had been torn loose or disarranged, and the pipe leading from an old wood burning stove in the living room had been ripped loose. Police found Miss Walker's body in a pool of blood in her living room; she was lying on the floor on her back, clothed in a thin cotton housecoat pulled up to her waist. She had a large wound in her right shoulder and neck area which a pathologist testified was caused by a shotgun and resulted in her death. Crisco made a statement to police on 8 July 1971, substantially corroborating her testimony on the witness stand. Crisco went to the scene of the crime with officers and pointed out where the car was first parked and where she later parked it. Defendant and Scearcy were arrested in Jacksonville, Florida, on or about 8 July 1971.

Brenda Leasor testified: She was acquainted with defendant and "had seen" Scearcy. On 17 June 1971, she met defendant at a party and after the party saw him at Stirewalt's trailer at which time defendant told her that "they knew where some money was and they were going to get it." She saw defendant on 25 June 1971 at Stirewalt's trailer and defendant told her "they had done the job." "As to whether he described the person he had to kill, he just said it was an old colored lady." On redirect examination, she testified that defendant related to her on that Friday night that he had shot an old Negro woman, that Scearcy had called his name and that Scearcy said he would have to shoot her or she would be able to identify them.

SBI Agent Jack Richardson testified that Brenda Leasor made a statement to him substantially the same as the testimony given by her.

Defendant did not testify but offered several witnesses whose testimony tended to show where defendant was in Cabarrus County at various hours up until 10:30 p.m. on 24 June 1971; that he and Edith Crisco were seen together early in the morning (around 3:30 or 4:00 a.m.) of 24 or 25 June 1971; and that he was seen at various places during the day of 25 June 1971.

The jury for their verdict found defendant guilty of second-degree murder and from judgment imposing prison term of 30 years, less credit for time spent in jail awaiting trial, defendant

appealed. He later withdrew his appeal but thereafter petitioned for a writ of certiorari which was allowed.

*Attorney General Robert Morgan, by Assistant Attorney General Richard N. League, for the State.*

*Smith, Carrington, Patterson, Follin & Curtis, by J. David James and Michael K. Curtis, for defendant appellant.*

BRITT, Judge.

By his first assignment of error, defendant contends the trial court erred in failing to quash the bill of indictment upon which defendant was tried for the reason that the indictment does not indicate that it was returned as a true bill. We find no merit in this assignment as the indictment clearly discloses that it was returned as a true bill.

By his second and third assignments of error, defendant contends the trial court erred (1) in allowing into evidence certain statements allegedly made by Edith Crisco in the presence of defendant and defendant's response thereto, and (2) instructing the jury that they could consider defendant's silence in the face of the statements as evidence of his guilt. The assignments have merit.

The challenged testimony was given by SBI Agent Barrier. He testified, among other things, that he talked with Edith Crisco on the night she was arrested, 1 July 1971, and again on 8 July 1971; that the latter conversation took place in the presence of defendant; that on that occasion, in response to questions from Barrier, she stated that defendant and Scearcy accompanied her to the Walker home, that defendant was in the house when the shot was fired, and that they went to Miss Walker's house "for the purpose of robbing the old woman." The solicitor then asked Barrier if defendant made any denial and Barrier's answer was that defendant did not. Defendant's motion to strike Barrier's answer that defendant made no denial was overruled.

The challenged instruction to the jury was as follows:

"Evidence had been received which tends to show that a statement accusing the defendant of the crime charged in this case was made in his presence and the defendant neither denied or objected to the statement. This evidence should be considered by you with great caution before you may consider the defendant's silence on this as evidence of

his guilt, you must find first that the defendant—that the statement was in fact made in the hearing of the defendant, second, that he understood it and that it contained an accusation against him and third, that all the circumstances including the content of the statement and the identity of the person making it in the other person's presence was sufficient to make a reply natural and proper and fourth, that the defendant had an opportunity to reply. Unless you find all these things to be present you must completely disregard this evidence. If you consider the defendant's silence together with all other facts and circumstances in this case in determining the defendant's guilt or innocence."

Defendant contends the challenged testimony and instruction violated his right to remain silent as guaranteed by the Fifth Amendment to the Federal Constitution and by § 23 of Article I of the State Constitution. This contention is supported by decisions of the U. S. Supreme Court and our State Supreme Court and the current rule appears to be stated accurately in 2 Stansbury's N. C. Evidence § 179, at 53-54 (Brandis rev. 1973), as follows:

"It was formerly a general rule that silence might amount to an admission though the party (usually, of course, a criminal defendant) was in custody under a charge of crime, and though the person making the statement was incompetent to testify as an adverse witness; but in some custodial circumstances no reply was required and, therefore, the evidence was inadmissible. More recently, relying upon then section 11 (now section 23) of Article I of the North Carolina Constitution and upon a decision of the Supreme Court of the United States, our Court held that officers questioning an accused must advise him of his right to remain silent. If such a warning is given, it is obvious that his silence may not be used against him. If no warning is given, and the circumstances would be such as to make a confession inadmissible, evidence as to silence also seems to be inadmissible. Therefore, whenever an accused has been taken into custody and officers are present, evidence of an admission by silence is banned, at least as substantive evidence."

Nevertheless, we do not think defendant was sufficiently prejudiced by the challenged testimony and instruction to war-

---

---

rant a new trial. In *State v. Taylor*, 280 N.C. 273, 280, 185 S.E. 2d 677, 682 (1972), we find:

> "Every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065 (1967); *Harrington v. California*, 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969). Unless there is a reasonable possibility that the evidence complained of might have contributed to the conviction, its admission is harmless. *Fahy v. Connecticut*, 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963)."

See also *State v. Knight*, 282 N.C. 220, 192 S.E. 2d 283 (1972); *Schneble v. Florida*, 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056 (1972); *Harrington v. California*, 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969); and *State v. Swaney*, 277 N.C. 602, 178 S.E. 2d 399 (1971).

Applying the test quoted above to the case at bar, considering the overwhelming competent evidence presented against defendant, particularly the testimony of Edith Crisco and Brenda Leasor, we perceive no reasonable possibility that the challenged testimony and instruction had any significant bearing on the jury finding defendant guilty of murder. As was said in *Schneble v. Florida, supra*, "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of [the improperly admitted evidence] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the [incompetent evidence] was harmless error."

For the reasons stated, we conclude that defendant received a fair trial, free from prejudicial error.

No error.

Judges PARKER and VAUGHN concur.